# The People of the State of Illinois, Defendant in Error, v. Colin H. Ostrander, Plaintiff in Error.

## Gen. No. 6,158.

1.  INTOXICATING LIQUORS—*when title to liquor passes.* The rule as to when title to ordinary chattels passes has no application to a case where the sale in question was of a bottle of intoxicating liquor in violation of law, and where the sale was a mere device by which it was sought to give a color of legality to such a sale.

2.  INTOXICATING LIQUORS—*when title to liquor passes.* Title to liquor bought will not pass merely on payment of the price, and will only pass on delivery where no specific bottle of liquor is purchased, and where at the time of payment the liquor actually delivered had not been separated from the bulk, it being possible for the vendor at any time between separation and delivery to substitute another bottle for that finally delivered.

3.  INTOXICATING LIQUORS, § 67*—*what constitutes violation of Sunday closing law.* In a prosecution for keeping a tippling house open on Sunday, the keeping of such a house open on Sunday to serve intoxicating liquors therein *held* a violation of the statute, although it appeared that defendant received no money for liquor delivered on that day and collected such money in advance on Saturday, it also appearing that the purchasers of the liquor paid for on Saturday were tippling on Sunday in defendant's place with the liquor so paid for.

Error to the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed December 27, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly. same topic and section number.

A. L. TOMPKINS and GEORGE W. FIELD, for plaintiff in error.

R. J. DADY, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Ostrander kept a summer hotel at Fox Lake in Lake county and a licensed dramshop in connection therewith. He was convicted and fined under a count of an information which charged him with keeping open a tippling house in said county on Sunday, May 30, 1915, and brings that judgment to this court for review.

The witnesses for the People were two detectives from Chicago, and for the defendant, himself, his bartender and another. Said two detectives came to the hotel on the preceding Thursday and took rooms there and stayed until Monday. They drank whisky at Ostrander's bar on Thursday, Friday and Saturday. The evidence of the witnesses for the People and for the defense differs in unimportant particulars; but the evidence of the witnesses for defendant establishes the main facts upon which the prosecution rely to support the conviction. On Saturday evening, Ostrander said to the two detectives that if they wished to get any liquor on Sunday they must pay for it that evening, as he did not take money for liquor on Sunday. They acquiesced and each paid the bartender a sum of money, the exact amount being in dispute and unimportant. They then left the saloon. After they had gone away, Ostrander got a bottle in which Jamaica ginger had been kept and put into it a certain quantity of whisky of the brand which these two detectives had been drinking, and evidently he put in the quantity that would be paid for by the money which they had paid to the bartender for that purpose. He placed this bottle on the bar afterwards, and told his bartender that if these men called for any whisky Sunday to serve them from that bottle. The saloon was open

all day Sunday until ten o'clock at night.  These detectives went there and called for whisky and were served with whisky from that bottle at least twice, if not more times, that day.  They saw people there when they were there sitting at tables and drinking what had the appearance of beer and whisky; but they did not know what it was, in fact, that the other people drank, and defendant and his bartender denied that they served intoxicating liquor that day to any one other than the People's witnesses.  This was a tippling house, it was open all day Sunday and defendant's bartender served whisky on either two or three occasions at least to these detectives.  The sole defense is that when they paid for the whisky on Saturday night, it became their whisky without delivery, and therefore no whisky was sold in this barroom on that Sunday, and that what was delivered to these men was their own whisky.

We are not disposed to hold that the rule which prevails as to when the title to ordinary personal chattels passes has any bearing upon this case.  The Supreme Court and this court have frequently disapproved of devices by which a color of legality was given to sales of liquor not authorized by law.  The rule contended for does not apply to the facts of this case in any event.  The detectives did not buy and pay for any specific bottle of liquor.  They merely paid for whisky that was to be served to them on Sunday.  No whisky had been separated from the bulk while they were in the saloon that Saturday night.  After they had left the saloon, defendant did separate and set apart some liquor for them, but it had not yet been delivered and they had not been advised of that separation, and he undoubtedly could have substituted any other bottle of liquor for it at his pleasure.  If by what he did with these two men he evaded the requirement of the statute forbidding the keeping open of a tippling house on Sunday and escaped being liable for

a violation of the statute, he could have made other contracts with other men of a similar character on the same Saturday night, and might have been busy all day Sunday delivering and serving the liquor so paid for the night before. A similar question was presented to the Court of Criminal Appeals of Texas in *Wallis v. State,* 78 S. W. 231, where, after stating the evidence, the court said:

"So, under the proof, the case resolves itself into the proposition whether a saloon keeper can make sales of his goods on Saturday, put them in the refrigerator, keeping them cool until Sunday, and then deliver said goods to his customers. If he can do it in one instance, he can do the same thing in another or other instances. And if he should make a sufficient number of sales for delivery on the next day, his house might be thus kept open the entire day to consummate deliveries. An essential part of the business of a saloon keeper is the keeping of his drinks cool, or the cooling of them with ice in the summer; and if he can make sales on Saturday, and keep the goods of the purchasers in his refrigerator for delivery on Sunday, he would be compelled to keep open for that purpose. Although he makes no sale on Sunday, and receives no money on Sunday for goods previously sold, still he has brought about the necessity of keeping open for the delivery of his wares. It is true the proof here shows only a specific instance of delivery, and that was through the broken glass of his back door; still he kept open for this purpose, and in pursuance of an agreement to deliver the goods on Sunday."

The conviction of the defendant was there sustained. That case was decided January 13, 1904, and seems never to have been published in the reports of that State, but we are advised that its omission was accidental. According to the quotations in the brief for defendant in error, conviction has been sustained in a like case in *Rex v. Clark,* 27 Ont. L. Rep. 525, and 31

Am. & Eng. Ann. Cases, 637; and that case is based upon the English cases of *Noblett v. Hopkinson*, 2 K. B. 214; and *Saunders v. Thorney*, 78 L. T. (N. S.) 627. We have not access to those cases and merely cite them for the information of the bar. It is our view that by keeping his dramshop open on Sunday to serve intoxicating liquors therein, defendant was violating the statute in question, and that he is not relieved of responsibility by the fact that he collected the pay therefor in advance on Saturday, and did not receive the money therefor on Sunday. These men were tippling in his dramshop on Sunday with intoxicating drink which he there delivered to them, and he kept the place open for that purpose. The rulings on the instructions conformed to these views. The judgment is therefore affirmed.

*Affirmed.*